No. 15-872 T
(Judge Edward J. Damich)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MINDY P. NORMAN,

                               Plaintiff,

v.

THE UNITED STATES,

                               Defendant.

DEFENDANT'S APPENDIX OF SELECTED STATUTES, REGULATIONS, AND OTHER AUTHORITIES

                               DAVID A. HUBBERT
                               Acting Assistant Attorney General

                               DAVID I. PINCUS
                               JASON BERGMANN
                               BLAINE G. SAITO
                               Attorneys
                               Justice Department (Tax)
                               Court of Federal Claims Section
                               P.O. Box 26
                               Ben Franklin Post Office
                               Washington, D.C.  20044
                               (202) 353-7125
                               (202) 514-9440 (facsimile)

## TABLE OF CONTENTS

|  | Page |
|---|---|
| 31 U.S.C. § 5314 Records and reports on foreign financial agency transactions | 1 |
| 31 U.S.C. § 5321 Civil penalties | 2 |
| 31 C.F.R. § 103.24 Reports of foreign financial accounts | 3 |
| 31 C.F.R. § 103.27 Filing of reports | 3 |
| 31 C.F.R. § 103.56 Enforcement | 3 |
| Internal Revenue Service, Voluntary Disclosure: Questions and Answers | 4 |

**31 U.S.C. § 5314 Records and reports on foreign financial agency transactions**

(a) Considering the need to avoid impeding or controlling the export or import of monetary instruments and the need to avoid burdening unreasonably a person making a transaction with a foreign financial agency, the Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency. The records and reports shall contain the following information in the way and to the extent the Secretary prescribes:

    (1) the identity and address of participants in a transaction or relationship.

    (2) the legal capacity in which a participant is acting.

    (3) the identity of real parties in interest.

    (4) a description of the transaction.

(b) The Secretary may prescribe–

    (1) a reasonable classification of person subject to or exempt from a requirement under this section or a regulation under this section;

    (2) a foreign country to which a requirement or a regulation under this section applies if the Secretary decides applying the requirement or regulation to all foreign countries is unnecessary or undesirable;

    (3) the magnitude of transactions subject to a requirement or regulation under this section;

    (4) the kind of transaction subject to or exempt from a requirement under this section; and

    (5) other matters the Secretary considers necessary to carry out this section or a regulation under this section.

(c) A person shall be required to disclose a record required to be kept under this section or under a regulation under this section only as required by law.

**31 U.S.C. § 5321 Civil penalties**

(a)(5) Foreign financial agency transaction violation.–

    (A) Penalty authorized.–The Secretary of the Treasury may impose a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314.

    (B) Amount of penalty.–

        (i) In general.– Except as provided in subparagraph (C), the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000.

        (ii) Reasonable cause exception.–No penalty shall be imposed under subparagraph (A) with respect to any violation if–

            (I) such violation was due to reasonable cause, and

            (II) the amount of the transaction or the balance in the account at the time of the transaction was properly reported.

    (C) Willful violations.–In the case of any person willfully violating, or willfully causing any violation of, any provision of section 5314–

        (i) the maximum penalty under subparagraph (B)(i) shall be increased to the greater of–

            (I) $100,000, or

            (II) 50 percent of the amount determined under subparagraph (D), and

        (ii) subparagraph (B)(ii) shall not apply.

    (D) Amount.–The amount determined under this subparagraph is–

        (i) in the case of a violation involving a transaction, the amount of the transaction, or

        (ii) in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, the balance in the account at the time of the violation.

**31 C.F.R. § 103.24 Reports of foreign financial accounts**

(a) Each person subject to the jurisdiction of the United States (except a foreign subsidiary of a U.S. person) having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists, and shall provide such information as shall be specified in a reporting form prescribed by the Secretary to be filed by such persons. Persons having a financial interest in 25 or more foreign financial accounts need only note that fact on the form. Such persons will be required to provide detailed information concerning each account when so requested by the Secretary or his delegate.

**31 C.F.R. § 103.27 Filing of reports**

(c) Reports required to be filed by § 103.24 shall be filed with the Commissioner of Internal Revenue on or before June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year.

(d) Reports required by § 103.22, § 103.23 or § 103.24 shall be filed on forms prescribed by the Secretary. All information called for in such forms shall be furnished.

(e) Forms to be used in making the reports required by §§ 103.22 and 103.24 may be obtained from the Internal Revenue Service. Forms to be used in making the reports required by § 103.23 may be obtained from the U.S. Customs Service.

**31 C.F.R. § 103.56 Enforcement**

(g) The authority to enforce the provisions of 31 U.S.C. 5314 and §§ 103.24 and 103.32 of this part has been redelegated from FinCEN to the Commissioner of Internal Revenue by means of a Memorandum of Agreement between FinCEN and IRS. Such authority includes, with respect to 31 U.S.C. 5314 and §§ 103.24 and 103.32 of this part, the authority to: assess and collect civil penalties under 31 U.S.C. 5321 and 31 CFR 103.57; investigate possible civil violations of these provisions (in addition to the authority already provided at paragraph (c)(2)) of this section); employ the summons power of subpart F of part 103; issue administrative rulings under subpart G of part 103; and take any other action reasonably necessary for the enforcement of these and related provisions, including pursuit of injunctions.

Home  >  News  >  News Releases  >  Voluntary Disclosure: Questions and Answers

# Voluntary Disclosure: Questions and Answers

English

| What's Hot |
| News Releases |
| Multimedia Center |
| Tax Relief in Disaster Situations |
| Radio PSAs |
| Tax Scams/Consumer Alerts |
| The Tax Gap |
| Fact Sheets |
| IRS Tax Tips |
| e-News Subscriptions |
| IRS Guidance |
| Media Contacts |
| IRS Future State |
| IRS Statements and Announcements |

Update — Starting at various times in 2013, FinCEN forms supersede TD F 90-22.1 (the FBAR form that was used in prior years) and are only available online through the BSA E-Filing System website. More information is available.

Feb. 8, 2011 — The IRS has announced a new 2011 Offshore Voluntary Dislcosure Initiative that runs through Aug. 31, 2011. For more more information about the special the 2011 initiative, visit (2011 OVDI landing page).

The information below relates to the questions and answers regarding the 2009 Offshore Voluntary Disclosure Program.

The September 23, 2009, deadline for certain FBAR filers and certain offshore-related information returns who have no unreported income is also extended to Oct. 15, 2009. All other guidance included on the page may still be relied upon.

January 8, 2010 — added Q&As 53-54
August 25, 2009 — added Q&A 52
July 31, 2009 — modified A6, A21 and A22
June 24, 2009 — modified A26 and added Q&A 31-51
May 6, 2009 — posted Q&A 1-30

**Q1. Why did the IRS issue internal guidance regarding offshore activities now?**
A1. The IRS has had a voluntary disclosure practice in its Criminal Manual for many years. Once IRS Criminal Investigation has determined preliminary acceptance into the voluntary disclosure program, the case is referred to the civil side of IRS for examination and resolution of taxes and penalties. Recent IRS enforcement efforts in the offshore area have led to an increased number of voluntary disclosures. Additional taxpayers are considering making voluntary disclosures but are reportedly reluctant to come forward because of uncertainty about the amount of their liability for potentially onerous civil penalties. In order to resolve these cases in an organized, coordinated manner and to make exposure to civil penalties more predictable, the IRS has decided to centralize the civil processing of offshore voluntary disclosures and to offer a uniform penalty structure for taxpayers who voluntarily come forward. These steps were taken to ensure that taxpayers are treated consistently and predictably.

**Q2. What is the objective of these steps?**
A2. The objective is to bring taxpayers that have used undisclosed foreign accounts and undisclosed foreign entities to avoid or evade tax into compliance with United States tax laws.  Additionally, the information gathered from taxpayers making voluntary disclosures under this practice will be used to further the IRS's understanding of how foreign accounts and foreign entities are promoted to United States taxpayers as ways to avoid or evade tax.  Data gathered will be used in developing additional strategies to inhibit promoters and facilitators from soliciting new clients.

**Q3. Why should I make a voluntary disclosure?**
A3. Taxpayers with undisclosed foreign accounts or entities should make a voluntary disclosure because it enables them to become compliant, avoid substantial civil penalties and generally eliminate the risk of criminal prosecution.  Making a voluntary disclosure also provides the opportunity to calculate, with a reasonable degree of certainty, the total cost of resolving all offshore tax issues.  Taxpayers who do not submit a voluntary disclosure run the risk of detection by the IRS and the imposition of substantial penalties, including the fraud penalty and foreign information return penalties, and an increased risk of criminal prosecution.

**Q4. What is the IRS's Voluntary Disclosure Practice?**

4

A4. The Voluntary Disclosure Practice is a longstanding practice of IRS Criminal Investigation of taking timely, accurate, and complete voluntary disclosures into account in deciding whether to recommend to the Department of Justice that a taxpayer be criminally prosecuted. It enables noncompliant taxpayers to resolve their tax liabilities and minimize their chances of criminal prosecution. When a taxpayer truthfully, timely, and completely complies with all provisions of the voluntary disclosure practice, the IRS will not recommend criminal prosecution to the Department of Justice.

**Q5. How do I make a voluntary disclosure and where should I submit my voluntary disclosure?**

A5. A voluntary disclosure is made by following the procedures described in I.R.M. 9.5.11.9. Tax professionals or individuals who want to initiate a voluntary disclosure, should call their local CI office. Taxpayers with questions may call the IRS Voluntary Disclosure Hotline at (215)516-4777, visit www.irs.gov, or contact their nearest CI office.

**Q6. What form should my voluntary disclosure take?**

A6. **[Revised July 31, 2009]** You may either contact the nearest Special Agent in Charge, IRS Criminal Investigation, stating that you wish to make a voluntary disclosure, or provide a letter outlining information needed to assist the IRS in determining your acceptance into the voluntary disclosure program. You should also include a power of attorney (Form 2848), if you are represented by a third party, and daytime contact information for you or your representative. If you have already completed the amended or delinquent returns, those should be submitted with the letter, but it is not necessary to include them with the initial submission if you are unable to do so.

**Q7. I'm currently under examination. Can I come in under voluntary disclosure?**

A7. No. If the IRS has initiated a civil examination, regardless of whether it relates to undisclosed foreign accounts or undisclosed foreign entities, the taxpayer will not be eligible to come in under the IRS's Voluntary Disclosure Practice.

**Q8. I have an offshore merchant account upon which I have not reported all of the income. Can I come in under the IRS's voluntary disclosure practice?**

A8. Yes. Taxpayers with unreported income from an offshore merchant account can make a voluntary disclosure.

**Q9. I have properly reported all my taxable income but I only recently learned that I should have been filing FBARs in prior years to report my personal foreign bank account or to report the fact that I have signature authority over bank accounts owned by my employer. May I come forward under the voluntary disclosure practice to correct this?**

A9. The purpose for the voluntary disclosure practice is to provide a way for taxpayers who did not report taxable income in the past to voluntarily come forward and resolve their tax matters. Thus, If you reported and paid tax on all taxable income but did not file FBARs, do not use the voluntary disclosure process.

For taxpayers who reported and paid tax on all their taxable income for prior years but did not file FBARs, you should file the delinquent FBAR reports **according to the instructions** (send to Department of Treasury, Post Office Box 32621, Detroit, MI 48232-0621) and attach a statement explaining why the reports are filed late. Send **copies** of the delinquent FBARs, together with copies of tax returns for all relevant years, by September 23, 2009, to the Philadelphia Offshore Identification Unit at:

> Internal Revenue Service
> 11501 Roosevelt Blvd.
> South Bldg., Room 2002
> Philadelphia, PA 19154
> Attn: Charlie Judge, Offshore Unit, DP S-611

The IRS will not impose a penalty for the failure to file the FBARs.

**Q10. What if the taxpayer has already filed amended returns reporting the additional unreported income, without making a voluntary disclosure (i.e., quiet disclosure)?**

A10. The IRS is aware that some taxpayers have attempted so-called "quiet" disclosures by filing amended returns and paying any related tax and interest for previously unreported offshore income without otherwise notifying the IRS. Taxpayers who have already made "quiet" disclosures may take advantage of the penalty framework applicable to voluntary disclosure requests regarding unreported offshore accounts and entities. Those taxpayers must send previously submitted documents, including copies of amended returns, to their local CI office by September 23, 2009. (See Q&A 5).

Taxpayers are strongly encouraged to come forward under the Voluntary Disclosure Practice to make timely, accurate, and complete disclosures. Those taxpayers making "quiet" disclosures should be aware of the risk of being examined and potentially criminally prosecuted for all applicable years.

The IRS has identified, and will continue to identify, amended tax returns reporting increases in income. The IRS will be closely reviewing these returns to determine whether enforcement action is appropriate.

**Q11. Is a taxpayer who sought relief under the IRS's Voluntary Disclosure Practice before this internal guidance was issued, eligible for the terms described in this internal guidance?**

A11. Yes. If a taxpayer sought relief under the IRS's Voluntary Disclosure Practice before this internal guidance was issued he or she may be eligible, as long as the voluntary disclosure has not yet resulted in an assessment.

**Q12. How does the penalty framework work? Can you give us an example?**

A12. Assume the taxpayer has the following amounts in a foreign account over a period of six years. Although the amount on deposit may have been in the account for many years, it is assumed for purposes of the example that it is not unreported income in 2003.

| Year | Amount on Deposit | Interest Income | Account Balance |
| --- | --- | --- | --- |
| 2003 | $1,000,000 | $50,000 | $1,050,000 |
| 2004 |  | $50,000 | $1,100,000 |
| 2005 |  | $50,000 | $1,150,000 |
| 2006 |  | $50,000 | $1,200,000 |
| 2007 |  | $50,000 | $1,250,000 |
| 2008 |  | $50,000 | $1,300,000 |

5

(NOTE: This example does not provide for compounded interest, and assumes the taxpayer is in the 35-percent tax bracket, files a return but does not include the foreign account or the interest income on the return, and the maximum applicable penalties are imposed.)

**If the taxpayer comes forward and has their voluntary disclosure accepted by the IRS, they face this potential scenario:**

They would pay $386,000 plus interest. This includes:

- Tax of $105,000 (six years at $17,500) plus interest,

- An accuracy-related penalty of $21,000 (i.e., $105,000 x 20%), and

- An additional penalty, in lieu of the FBAR and other potential penalties that may apply, of $260,000 (i.e., $1,300,000 x 20%).

**If the taxpayer didn't come forward and the IRS discovered their offshore activities, they face up to $2,306,000 in tax, accuracy-related penalty, and FBAR penalty.  The taxpayer would also be liable for interest and possibly additional penalties, and an examination could lead to criminal prosecution.**

The civil liabilities potentially include:

- The tax and accuracy-related penalty, plus interest, as described above,

- FBAR penalties totaling up to $2,175,000 for willful failures to file complete and correct FBARs (2003- $100,000, 2004 - $100,000, 2005 - $100,000, 2006 - $600,000, 2007 - $625,000 and 2008 - $650,000),

- The potential of having the fraud penalty (75 percent) apply, and

- The potential of substantial additional information return penalties if the foreign account or assets is held through a foreign entity such as a trust or corporation and required information returns were not filed.

Note that if the foreign activity started more than six years ago, the Service may also have the right to examine additional years.

**Q13. What years are included in the 6-year period?**

A13. A taxpayer is expected to file correct delinquent or amended tax returns for tax year 2008 back to 2003.

**Q14. What are some of the criminal charges I might face if I don't come in under voluntary disclosure and the IRS finds me?**

A14. Possible criminal charges related to tax returns include tax evasion (26 U.S.C.§ 7201), filing a false return (26 U.S.C. § 7206(1)) and failure to file an income tax return (26 U.S.C. § 7203).  The failure to file an FBAR and the filing of a false FBAR are both violations that are subject to criminal penalties under 31 U.S.C. § 5322.

A person convicted of tax evasion is subject to a prison term of up to five years and a fine of up to $250,000.  Filing a false return subjects a person to a prison term of up to three years and a fine of up to $250,000.  A person who fails to file a tax return is subject to a prison term of up to one year and a fine of up to $100,000.  Failing to file an FBAR subjects a person to a prison term of up to ten years and criminal penalties of up to $500,000.

**Q15. What are some of the civil penalties that might apply if I don't come in under voluntary disclosure and the IRS finds me?  How do they work?**

A15. The following is a summary of potential reporting requirements and civil penalties that could apply to a taxpayer, depending on his or her particular facts and circumstances.

- A penalty for failing to file the Form TD F 90-22.1 (Report of Foreign Bank and Financial Accounts, commonly known as an "FBAR").United States citizens, residents and certain other persons must annually report their direct or indirect financial interest in, or signature authority (or other authority that is comparable to signature authority) over, a financial account that is maintained with a financial institution located in a foreign country if, for any calendar year, the aggregate value of all foreign accounts exceeded $10,000 at any time during the year.Generally, the civil penalty for willfully failing to file an FBAR can be as high as the greater of $100,000 or 50 percent of the total balance of the foreign account.See 31 U.S.C. § 5321(a)(5).  Nonwillful violations are subject to a civil penalty of not more than $10,000.

- A penalty for failing to file Form 3520, Annual Return to Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. Taxpayers must also report various transactions involving foreign trusts, including creation of a foreign trust by a United States person, transfers of property from a United States person to a foreign trust and receipt of distributions from foreign trusts under section 6048.This return also reports the receipt of gifts from foreign entities under section 6039F.The penalty for failing to file each one of these information returns, or for filing an incomplete return, is 35 percent of the gross reportable amount, except for returns reporting gifts, where the penalty is five percent of the gift per month, up to a maximum penalty of 25 percent of the gift.

- A penalty for failing to file Form 3520-A, Information Return of Foreign Trust With a U.S. Owner.Taxpayers must also report ownership interests in foreign trusts, by United States persons with various interests in and powers over those trusts under section 6048(b).The penalty for failing to file each one of these information returns or for filing an incomplete return, is five percent of the gross value of trust assets determined to be owned by the United States person.

- A penalty for failing to file Form 5471, Information Return of U.S. Person with Respect to Certain Foreign Corporations. Certain United States persons who are officers, directors or shareholders in certain foreign corporations (including International Business Corporations) are required to report information under sections 6035, 6038 and 6046.The penalty for failing to file each one of these information returns is $10,000, with an additional $10,000 added for each month the failure continues beginning 90 days after the taxpayer is notified of the delinquency, up to a maximum of $50,000 per return.

- A penalty for failing to file Form 5472, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business.Taxpayers may be required to report transactions between a 25 percent foreign-owned domestic corporation or a foreign corporation engaged in a trade or business in the United States and a related party as required by sections 6038A and 6038C.The penalty for failing to file each one of these information returns, or to keep certain records regarding reportable transactions, is $10,000, with an additional $10,000 added for each month the failure continues beginning 90 days after the taxpayer is notified of the delinquency, up to a maximum of $50,000 per return.

- A penalty for failing to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation.Taxpayers are required to report transfers of property to foreign corporations and other information under section 6038B.The penalty for failing to file each one of these information returns is ten percent of the value of the property transferred, up to a maximum of $100,000 per return, with no limit if the failure to report the transfer was intentional.

- A penalty for failing to file Form 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships. United States persons with certain interests in foreign partnerships use this form to report interests in and transactions of the foreign partnerships, transfers of property to the foreign partnerships, and acquisitions, dispositions and changes in foreign partnership interests under sections 6038, 6038B, and 6046A.Penalties include $10,000 for failure to file each return, with an additional $10,000 added for each month the failure continues beginning 90 days after the taxpayer is notified of the delinquency, up to a maximum of $50,000 per return, and ten percent of the value of any transferred property that is not reported, subject to a $100,000 limit.

- Fraud penalties imposed under sections 6651(f) or 6663.Where an underpayment of tax, or a failure to file a tax return, is due to fraud, the taxpayer is liable for penalties that, although calculated differently, essentially amount to 75 percent of the unpaid tax.

- A penalty for failing to file a tax return imposed under section 6651(a)(1).Generally, taxpayers are required to file income tax returns.If a taxpayer fails to do so, a penalty of 5 percent of the balance due, plus an additional 5 percent for each month or fraction thereof during which the failure continues may be imposed. The penalty shall not exceed 25 percent.

- A penalty for failing to pay the amount of tax shown on the return under section 6651(a)(2).If a taxpayer fails to pay the amount of tax shown on the return, he or she may be liable for a penalty of .5 percent of the amount of tax shown on the return, plus an additional .5 percent for each additional month or fraction thereof that the amount remains unpaid, not exceeding 25 percent.

- An accuracy-related penalty on underpayments imposed under section 6662. Depending upon which component of the accuracy-related penalty is applicable, a taxpayer may be liable for a 20 percent or 40 percent penalty.

6

**Q16. Why did the IRS pick 6 months?**

A16. The March 23, 2009 memorandum communicating the approved penalty framework for resolving the civil side of offshore voluntary disclosures is effective for 6 months because the Service intends to re-evaluate the framework at that time.  Six months is a reasonable time to close out a number of voluntary disclosures, evaluate our experience and the feedback from the practitioner community, and decide whether or how to continue the practice going forward.

**Q17. What happens at the end of 6 months?  Will I get a better deal if I wait to see what the IRS does at the end of 6 months?**

A17. Taxpayers should not wait until the end of the 6-month period to make their voluntary disclosures as there is no guarantee that the taxpayer will still be eligible or that the current penalty terms will be available after 6 months.

Taxpayers who wait until the end of the 6-month period run the risk that they will be disqualified from the Voluntary Disclosure Practice.  The IRS has stepped up its enforcement efforts, including the use of John Doe summonses, to identify taxpayers using offshore accounts and entities to avoid tax.  In addition, the IRS continues to receive information from whistleblowers and other taxpayers making voluntary disclosures.  If the IRS receives specific information about a taxpayer's noncompliance before the taxpayer attempts to make a voluntary disclosure, the disclosure will not be timely and the taxpayer will not be eligible for the criminal and civil penalty relief available under the voluntary disclosure practice.  Finally, taxpayers run a substantial risk that the uniform penalty structure described in the internal guidance will not be available past the 6-month deadline or that the terms will be less beneficial to taxpayers.

**Q18. What should I do if I am having difficulty obtaining my records from overseas?**

A18. Our experience with offshore cases in recent years is that taxpayers are successful in retrieving copies of statements and other records from foreign banks when they genuinely attempt to do so.  If assistance is needed, the agent assigned to a case will work with the taxpayer in preparing a request that should be acceptable to the foreign bank.  The penalty framework described in the March 23 memorandum will apply to all voluntary disclosures in process within the 6-month timeframe, so difficulty in completing a voluntary disclosure started during that period will not disqualify a cooperative taxpayer from the penalty relief.  The key is to notify the Service of your intent to make a voluntary disclosure as soon as possible, and in any event, by Sept. 23, 2009.

**Q19. Are entities, such as corporations, partnerships and trusts eligible to make voluntary disclosures?**

A19. Yes, entities are eligible to participate in the IRS's Voluntary Disclosure Practice.

**Q20. Does the twenty percent penalty apply to entities? Does the twenty percent penalty apply only to cash and securities held in foreign accounts or entities or to tangible and intangible assets as well?**

A20. The twenty percent penalty applies to entities.  The twenty percent penalty applies to all assets (or at least the taxpayer's share) held by foreign entities (e.g., trusts and corporations) for which the taxpayer was required to file information returns, as well as all foreign assets (e.g., financial accounts, tangible assets such as real estate or art, and intangible assets such as patents or stock or other interests in a U.S. business) held or controlled by the taxpayer.

**Q21. Are taxpayers required to complete a questionnaire as part of the voluntary disclosure practice?**

A21.  **[Revised July 31, 2009]** There is no specific questionnaire for taxpayers to complete. However, taxpayers may submit their offshore voluntary disclosure using an optional format <u>letter</u> (as referenced in Question 6)

**Q22. Is there a list of questions taxpayers are expected to answer as part of the voluntary disclosure process?**

**A22.  [Revised July 31, 2009]** There is no standard list of questions for these cases.  The Service may require an interview with the taxpayer making a voluntary disclosure, depending on the facts of each case.  However, see the response to FAQ 21 for the link to an optional format letter.

**Q23. When determining the highest amount in each undisclosed foreign account for each year or the highest asset balance of all undisclosed foreign entities for each year, what exchange rate should be used?**

A23. Convert foreign currency by using the foreign currency exchange rate at the end of the year.  In valuing currency of a country that uses multiple exchange rates, use the rate that would apply if the currency in the account were converted into United States dollars at the close of the calendar year.  Each account is to be valued separately.

**Q24. Will I have to file or amend my old tax returns?**

A24. Yes.  Any tax return not filed during the previous 6-year period that was otherwise required to be filed by law, must be filed by the taxpayer.  In addition, any inaccurate returns for any of the 6 years must be amended by the taxpayer.

**Q25. Besides federal income tax returns, what forms or other returns must be filed?**

A25. The following forms must be filed:

- Copies of original and amended federal income tax returns for tax periods covered by the voluntary disclosure;

- Complete and accurate amended federal income tax returns (or original returns, if not previously filed) of the taxpayer for all tax years covered by the voluntary disclosure;

- An explanation of previously unreported or underreported income or incorrectly claimed deductions or credits related to undisclosed foreign accounts or undisclosed foreign entities, including the reason(s) for the error or omission;

- If the taxpayer is a decedent's estate, or is an individual who participated in the failure to report the foreign account or foreign entity in a required gift or estate tax return, either as executor or advisor, complete and accurate amended estate or gift tax returns (original returns, if not previously filed) necessary to correct the underreporting of assets held in or transferred through undisclosed foreign accounts or foreign entities;

- Complete and accurate amended information returns required to be filed by the taxpayer, including, but not limited to, Forms 3520, 3520-A, 5471, 5472, 926 and 8865 (or originals, if not previously filed) for all tax years covered by the voluntary disclosure, for which the taxpayer requests relief; and

- Complete and accurate Form TD F 90.22-1, Report of Foreign Bank and Financial Accounts, for foreign accounts maintained during calendar years covered by the voluntary disclosure.

**Q26. If I had an FBAR reporting obligation for years covered by the voluntary disclosure, what version of the Form TD F 90-22.1 should I use to report my interests in foreign accounts?**

A.  **[Revised June 24, 2009]** Taxpayers should use the current version of Form TD F 90-22.1, (revised in October 2008), to file delinquent FBARs to report foreign accounts maintained in prior years.  The taxpayer may, however, rely on the instructions for the prior version of the form (revised in July 2000) for purposes of determining who must file to report foreign accounts maintained in 2008 and prior calendar years.

Although the FBAR was revised in October 2008, <u>IRS News Release IR-2009-58 (June 5, 2009)</u> and <u>IRS Announcement 2009-51</u>permit the use of the definition of &quotUnited States person&quot in the prior version of the FBAR in determining who must file FBARs that are due on June 30, 2009.  Accordingly, for all FBARs that are due in the current and prior years, the term &quotUnited States person&quot means (1) a citizen or resident of the United States; (2) a domestic partnership; (3) a domestic corporation; or (4) a domestic estate or trust.

**Q27. If I don't have the ability to full pay can I still participate in the IRS's Voluntary Disclosure Practice?**

A27. Yes.  The March 23, 2009 guidance requires the taxpayer to fully pay all taxes and interest for all years covered, and the Voluntary Disclosure penalty, as well as all other unpaid, previously assessed liabilities, when the signed closing agreement is returned to the Service.  However, it is possible for a taxpayer who is unable to make full payment at that time to submit a request that includes other payment arrangements acceptable to the IRS.

The burden will be on the taxpayer to establish inability to pay, to the satisfaction of the IRS, based on full disclosure of all assets and income sources, domestic and offshore, under the taxpayer's control.  Assuming that the IRS determines that the inability to fully pay is genuine, the taxpayer must work out other financial arrangements, acceptable to the IRS, to resolve all outstanding liabilities, in order to be entitled to the penalty relief set forth in the March 23, 2009 guidance.

**Q28. If the taxpayer and the IRS cannot agree to the terms of the closing agreement, will mediation with Appeals be an option with respect to the terms of the closing agreement?**

A28. No. The penalty framework and the agreement to limit tax exposure to the most recent 6 years are package terms. If any part of the penalty framework is unacceptable to the taxpayer, the case will be examined and all applicable penalties may be imposed. Any tax and penalties imposed by the Service on examination may be appealed, but not the Service's decision on the terms of the closing agreement applying the penalty framework.

**Q29. I have a client who may be eligible to make a voluntary disclosure. What are my responsibilities to my client under Circular 230?**

A29. The IRS expects taxpayers to seek qualified legal advice and representation in connection with considering and making a voluntary disclosure. If a taxpayer seeks the advice of a tax practitioner but nonetheless decides not to make a voluntary disclosure despite the taxpayer's noncompliance with Untied States tax laws, Circular 230, section 10.21, requires the practitioner to advise the client of the fact of the client's noncompliance and the consequences of the client's noncompliance as provided under the Code and regulations.

**Q30. Can I talk to the IRS without revealing my client's identity?**

A30. Hypothetical situations present a potential for misunderstanding that exists when there is no assurance that the hypothetical contains all relevant facts. In addition, tax practitioners should be aware that posing a situation as a hypothetical does not satisfy the requirements of making a voluntary disclosure. If the IRS receives information relating specifically to the taxpayer's undisclosed foreign accounts or undisclosed foreign entities while the hypothetical question is pending, the taxpayer may become ineligible to make a voluntary disclosure.

If practitioners have questions about the terms of the voluntary disclosure program, they should contact the IRS Voluntary Disclosure Hotline at (215) 516-4777, visit www.irs.gov, or contact their nearest CI office with questions.

*Questions and answers 31 through 51 were added June 24, 2009.*

**Q31. How can the IRS propose adjustments to tax for a six-year period without either an agreement from the taxpayer or a statutory exception to the normal three-year statute of limitations for making those adjustments?**

A31. Going back six years is part of the resolution offered by the IRS for resolving offshore voluntary disclosures. The taxpayer must agree to assessment of the liabilities for those years in order to get the benefit of the reduced penalty framework. If the taxpayer does not agree to the tax, interest and penalty proposed by the voluntary disclosure examiner, the case will be referred to the field for a complete examination. In that examination, normal statute of limitations rules will apply. If no exception to the normal three-year statute applies, the IRS will only be able to assess tax, penalty and interest for three years. However, if the period of limitations was open because, for example, the IRS can prove a substantial omission of gross income, six years of liability may be assessed. Similarly, if there was a failure to file certain information returns, such as Form 3520 or Form 5471, the statute of limitations will not have begun to run. If the IRS can prove fraud, there is no statute of limitations for assessing tax.

**Q32. If a taxpayer's violation includes unreported individual foreign accounts and business accounts (for an active business), does the 20 percent offshore penalty include the business accounts?**

A32. Yes. Assuming that there is unreported income with respect to all the accounts, they all will be included in the penalty base. No distinction is to be drawn based on whether the account is a business account or a savings or investment account.

**Q33. If the lookback period is 2003-2008, what does the taxpayer do if the taxpayer held foreign real estate, sold it in 2002, and did not report the gain on his 2002 return? Does the taxpayer compute the 20 percent on the highest aggregate balance in 2003-2008? What, if anything, does IRS expect the taxpayer to do with respect to 2002?**

A33. Gain realized on a foreign transaction occurring before 2003 does not need to be included as part of the voluntary disclosure. If the proceeds of the transaction were repatriated and were not offshore after January 1, 2003, they will not be included in the base for the 20 percent offshore penalty. On the other hand, if the proceeds remained offshore after January 1, 2003, and the income in the account was not reported, they will be included in the base for the penalty.

**Q34. If, after making a voluntary disclosure, a taxpayer disagrees with the 20 percent offshore penalty, what can the taxpayer do?**

A34. If any part of the penalty structure is unacceptable to a taxpayer, that case will follow the standard audit process. All relevant years and issues will be subject to a complete examination. At the conclusion of the examination, all applicable penalties (including information return and FBAR penalties) will be imposed. Those penalties could be substantially greater than the 20 percent penalty. If the case is unagreed, the taxpayer will have recourse to Appeals.

**Q35. Will examiners have any discretion to settle cases? For example, if a penalty for failing to file a Form 5471 for 6 years is $10,000 per year, will that be compared to 20 percent of the corporation's asset value? Would the lesser amount apply?**

A35. Voluntary disclosure examiners do not have discretion to settle cases for amounts less than what is properly due and owing. These examiners will compare the 20 percent offshore penalty to the total penalties that would otherwise apply to a particular taxpayer. Under no circumstances will a taxpayer be required to pay a penalty greater than what he would otherwise be liable for under existing statutes. If the taxpayer disagrees with the IRS's determination, as set forth in the closing agreement, the taxpayer may request that the case be referred for a standard examination of all relevant years and issues. At the conclusion of this examination, all applicable penalties, including information return penalties and FBAR penalties, will be imposed. If, after the standard examination is concluded the case is closed unagreed, the taxpayer will have recourse to Appeals. See Q&A 34.

**Q36. Re: Q&A 12  Does interest run on any of the penalties? If so, which ones and from what date does interest accrue?**

A36. With regard to the accuracy-related and delinquency penalties, interest runs from the due date of the return in question. With regard to all other penalties, interest runs from the date of assessment of the penalty.

**Q37. Re: Q&A 20  A taxpayer owns valuable land and artwork located in a foreign jurisdiction. This property produces no income and there were no reporting requirements regarding this property. Must the taxpayer report the land and artwork and pay a 20 percent penalty?**

A37. Q&A 20 relates to income producing property for which no income was reported. Under those circumstances, no distinction is made between assets held directly and assets held through an entity in computing the 20 percent offshore penalty. However, if the taxpayer owns nonincome producing property in the taxpayer's own name, there has been no U.S. taxable event and no reporting obligation to disclose. The taxpayer will be required to report any current income from the property or gain from its sale or other disposition at such time in the future as the income is realized. Because there has as yet been no tax noncompliance, the 20 percent offshore penalty would not apply to those assets. If the foreign assets were held in the name of an entity such as a trust or corporation, there would have been an information return filing obligation that may need to be disclosed. See Q&A 42.

**Q38. If a taxpayer transferred funds from one unreported foreign account to another between 2003 and 2008, will he have to pay a 20 percent offshore penalty on both accounts?**

A38. No. If the taxpayer can establish that funds were transferred from one account to another, any duplication will be removed before calculating the 20 percent penalty. However, the burden will be on the taxpayer to establish the extent of the duplication.

**Q39. How is the 20 percent offshore penalty computed if the taxpayer has multiple accounts or entities where the highest value of some accounts is not in the same year? Are separate penalties determined at the rate of 20 percent for each account or entity value?**

A39. The values of accounts and other assets are aggregated for each year and the penalty is calculated at 20 percent of the highest year's aggregate value.

**Q40. A taxpayer has two offshore accounts. No FBARs were filed. The taxpayer reported all income from one account but not the other. Mechanically, how does the taxpayer report this? Does the taxpayer report both accounts as a voluntary disclosure or bifurcate it into a delinquent FBAR filing for the reported account and a voluntary disclosure for the unreported account?**

A40. Because the annual FBAR requirement is to file a single report reporting all foreign accounts meeting the reporting requirement, it is not possible to bifurcate the corrected filing. The taxpayer should make a voluntary disclosure for the omitted income and include the delinquent FBARs with respect to both accounts. The account with no income tax issue is unrelated to the taxpayer's tax noncompliance, so no penalty will be imposed with respect to that account. See Q&A 9.

**Q41. If, in addition to other noncompliance, a taxpayer has failed to file an FBAR to report an account over which the taxpayer has signature authority but no beneficial interest (e.g., an account owned by his employer), will that foreign account be included in the base for calculating the taxpayer's 20 percent offshore penalty?**

A41. No. The account on which the taxpayer has mere signature authority will be treated as unrelated to the tax noncompliance the taxpayer is voluntarily disclosing. The taxpayer may cure the FBAR delinquency for the account the taxpayer does not own by filing the FBAR with an explanatory statement by September 23, 2009. See Q&A 9. The answer might be different (1) if the account over which the taxpayer has signature authority is held in the name of a related person, such as a family member or a corporation controlled by the taxpayer; (2) if the account is held in the name of a foreign corporation or trust for which the taxpayer had a Title 26 reporting obligation; or

8

(3) if the account was related in some other way to the taxpayer's tax noncompliance. In these cases, the taxpayer will be liable for the 20 percent offshore penalty if there is unreported income on the account. On the other hand, if there is no unreported income with respect to the account, no penalty will be imposed under the rationale of Q&A 40.

**Q42. Q&A 9 states that a taxpayer who only failed to file an FBAR should not use this process. What about a taxpayer who only has delinquent Form 5471s or Form 3520s but no tax due? Does that taxpayer fall outside this voluntary disclosure process?**

A42. A taxpayer who has failed to file tax information returns, such as Form 5471 for controlled foreign corporations (CFCs) or Form 3520 for foreign trusts but who has reported and paid tax on all their taxable income with respect to all transactions related to the CFCs or foreign trusts, should file delinquent information returns **with the appropriate service center** according to the instructions for the form and attach a statement explaining why the information returns are filed late. (The Form 5471 should be submitted with an amended return showing no change to income or tax liability.) Send **copies** of the delinquent information returns, together with copies of tax returns for all relevant years, by September 23, 2009, to the Philadelphia Offshore Identification Unit at:

> Internal Revenue Service
> 11501 Roosevelt Blvd.
> South Bldg., Room 2002
> Philadelphia, PA 19154
> Attn: Charlie Judge, Offshore Unit, DP S-611

The IRS will not impose a penalty for the failure to file the information returns.

**Q43. Re: Q&A 9  A taxpayer recently learned that they have an FBAR filing obligation but they do not have sufficient time to gather the information necessary to properly file the FBAR by the June 30, 2009 due date. How should the taxpayer proceed?**

A43. Taxpayers who reported and paid tax on all their 2008 taxable income but only recently learned of their FBAR filing obligation and have insufficient time to gather the necessary information to complete the FBAR, should file the delinquent FBAR report **according to the instructions** (send to Department of Treasury, Post Office Box 32621, Detroit, MI 48232-0621) and attach a statement explaining why the report is filed late. Send a **copy** of the delinquent FBAR, together with a copy of the 2008 tax return, by September 23, 2009, to the Philadelphia Offshore Identification Unit at the address in Q&A 9.

In this situation, the IRS will not impose a penalty for the failure to file the FBAR.

Additionally, if all 2008 taxable income with respect to a foreign financial account is timely reported and a United States person only recently learned they have a 2008 FBAR obligation and there is insufficient time to gather the necessary information to complete the FBAR, the United States person may follow the procedures set forth above and no penalty will be imposed.

For 2008 tax returns due after September 23, 2009, the tax return does not need to accompany the 2008 FBAR.

**Q44. Re: Q&A 12  The due date for the 2008 FBAR is June 30, 2009. Should a taxpayer file a 2008 FBAR in the normal manner or should a taxpayer submit it with the voluntary disclosure request?**

A44. Except as described in Q&A 43, the taxpayer should timely file the 2008 FBAR in the normal manner by the June 30, 2009 deadline and submit an additional copy with the taxpayer's voluntary disclosure.

**Q45. If a taxpayer is uncertain about whether he is required to file an FBAR with respect to a particular foreign account, how can the taxpayer get help with this question?**

A45. Help with questions about FBAR filing requirements is available on the FBAR Hotline at 1-800-800-2877. When the call is answered, select option 2. You can also submit written questions about the FBAR rules by e-mail addressed to FBARQuestions@irs.gov. The instructions to the FBAR form are available at www.irs.gov. Do not call the Voluntary Disclosure Hotline with questions about whether you have an FBAR filing requirement. The purpose of the Voluntary Disclosure Hotline is to answer questions about how to make voluntary disclosures and what penalties apply, assuming a taxpayer was required to file.

**Q46. A taxpayer moved to the U.S. in 2007 and is now a permanent resident of the U.S. The taxpayer had a requirement to file an FBAR for one year but failed to do so. Is the taxpayer subject to a penalty equal to 20 percent of the account?**

A46. First, the taxpayer should confirm that the taxpayer had an FBAR filing requirement. Assuming that the taxpayer was required to report the interest earned on the account during the year the taxpayer was in the U.S. and failed to do so, the taxpayer is subject to a penalty based on the high account balance during the year. The penalty may be limited to five percent if the taxpayer did not avoid U.S. tax with respect to the deposits and if the account was passively held during the year the taxpayer was in the U.S. If there was no unreported taxable income related to the unreported foreign accounts that would have been reported on the FBAR, the taxpayer will not be subject to the 20 percent offshore penalty. In that case, the taxpayer should file delinquent FBARs attaching a statement explaining why the FBAR was not timely filed. For more information, see Q&A 9.

**Q47. If parents have a jointly owned foreign account on which they have made their children signatories, the children have an FBAR filing requirement but no income. Should the children just file delinquent FBARs as described by Q&A 9 and have the parents submit a voluntary disclosure? Will both parents be penalized 20 percent each? Will each have a 20 percent penalty on 50 percent of the balance?**

A47. Only one 20 percent offshore penalty will be applied with respect to voluntary disclosures relating to the same account. In the example, the parents will be jointly required to pay a single 20 percent penalty on the account. This can be through one parent paying the total penalty or through each paying a portion, at the taxpayers' option. For those signatories with no ownership interest in the account, such as the children in these facts, they may file delinquent FBARs with no penalty as described in Q&As 9 and 41. However, any joint account owner who does not make a voluntary disclosure may be examined and subject to all appropriate penalties.

**Q48. If there are multiple individuals with signature authority over a trust account, does everyone involved need to file delinquent FBARs? If so, could everyone be subject to a 20 percent offshore penalty?**

A48. Only one 20 percent offshore penalty will be applied with respect to voluntary disclosures relating to the same account. The penalty may be allocated among the taxpayers making the disclosures in any way they choose. The reporting requirements for filing an FBAR, however, do not change. Therefore, every individual who is required to file an FBAR must file one.

**Q49. Re: Q&A 10  Some taxpayers have made quiet disclosures by filing amended returns. Will the IRS audit these taxpayers? If so, will they be eligible for the 20 percent offshore penalty? Is the IRS really going to prosecute someone who filed an amended return and correctly reported all their income?**

A49. The IRS is reviewing amended returns and could select any amended return for examination. If a return is selected for examination, the 20 percent offshore penalty would not be available. When criminal behavior is evident and the disclosure does not meet the requirements of a voluntary disclosure under IRM 9.5.11.9, the IRS may recommend criminal prosecution to the Department of Justice. Taxpayers who have already made quiet disclosures but have not yet been selected for examination may take advantage of the penalty framework applicable to voluntary disclosure requests regarding unreported offshore accounts and entities, provided they otherwise meet the criteria for voluntary disclosure set forth in IRM 9.5.11.9. Those taxpayers must send previously submitted documents, including copies of amended returns, to their local CI office by September 23, 2009. See Q&As 4 and 10 for more information.

**Q50. What is the distinction between filing amended returns to correct errors and filing a voluntary disclosure?**

A50. An amended return is the proper vehicle to correct an error on a filed return, whether a taxpayer receives a refund or owes additional tax. A voluntary disclosure is a truthful, timely and complete communication to the IRS in which a taxpayer shows a willingness to cooperate (and does in fact cooperate) with the IRS in determining the taxpayer's correct tax liability and makes arrangements in good faith to fully pay that liability. Filing correct amended returns is normally a part of the process of making a voluntary disclosure under IRM 9.5.11.9.

Taxpayers and practitioners trying to decide whether to simply file an amended return with a Service Center or to make a formal voluntary disclosure under the process described in IRM 9.5.11.9 and the March 23, 2009 memoranda should consider the nature of the error they are trying to correct. Taxpayers with undisclosed foreign accounts or entities should consider making a voluntary disclosure because it enables them to become compliant, avoid substantial civil penalties and generally eliminate the risk of criminal prosecution. Making a voluntary disclosure also provides the opportunity to calculate, with a reasonable degree of certainty, the total cost of resolving all offshore tax issues. It is anticipated that the voluntary disclosure process is appropriate for most taxpayers who have underreported their income with respect to

offshore accounts and assets. However, there will become cases, such as where a taxpayer has reported all income but failed to file the FBAR (Q&A 9), or only failed to file information returns (Q&A 42), where it remains appropriate for the taxpayer to simply file amended returns with the applicable Service Center (with copies to the Philadelphia office listed in Q&A 9).

**Q51. If the Service has served a John Doe summons seeking information that may identify a taxpayer as holding an undisclosed foreign account or undisclosed foreign entity, does that make the taxpayer ineligible to make a voluntary disclosure in accordance with the March 23, 2009 guidance?**

A51. No. The mere fact that the Service served a John Doe summons does not make every member of the John Doe class ineligible to participate. However, once the Service obtains information under a John Doe summons that provides evidence of a specific taxpayer's noncompliance with the tax laws, that particular taxpayer may become ineligible. For this reason, a taxpayer concerned that a party served with a John Doe summons will provide information about them to the Service should apply to make a voluntary disclosure as soon as possible.

**Q52. Are UBS account holders eligible to make a voluntary disclosure under the IRS's offshore Voluntary Disclosure Practice (VDP) announced on March 23, 2009, and set to expire September 23, 2009?**

A52. Yes, provided that the UBS account holder is otherwise eligible under the VDP. However, a UBS account holder becomes ineligible to make a voluntary disclosure under the offshore VDP at the time the IRS receives information from any source, including from the Swiss Federal Tax Administration ("SFTA"), UBS, an informant, or otherwise, relating specifically to the account holder's undisclosed foreign accounts or undisclosed foreign entities.

As part of the agreement with Switzerland and UBS announced by the IRS and the Department of Justice on August 19, 2009, UBS will be sending notices to account holders indicating that their information may be provided to the IRS under the agreement. If a UBS account holder gets this notification from UBS before September 23rd, this notification will not by itself disqualify the account holder from making a voluntary disclosure under the offshore VDP by the September 23rd deadline. Although many of these notices will not be sent by UBS to account holders until after September 23rd, the September 23rd offshore VDP deadline applies to all UBS account holders even if they have not received a notice by that date.

*Questions and answers 53 and 54 were added January 8, 2010.*

**Q 53. I am an actual or former UBS AG client who submitted a voluntary disclosure application to the IRS. I would like to expedite submission of my UBS AG account information to the IRS by providing a waiver directly to UBS AG. How does this work?**

A53. THE UNITED STATES OF AMERICA AND THE SWISS CONFEDERATION ENTERED INTO AN AGREEMENT ON AUGUST 19, 2009, CONCERNING THE REQUEST FOR INFORMATION FROM THE INTERNAL REVENUE SERVICE OF THE UNITED STATES ("IRS") REGARDING UBS AG, A CORPORATION ESTABLISHED UNDER THE LAWS OF THE SWISS CONFEDERATION ("UBS AG"). SECTION 1.4 OF THAT AGREEMENT PROVIDES THAT THE IRS WILL PROMPTLY REQUEST ALL UBS AG CLIENTS WHO ENTER INTO THE VOLUNTARY DISCLOSURE PROGRAM ON OR AFTER AUGUST 19, 2009, TO GIVE A WAIVER TO UBS AG TO PROVIDE ACCOUNT DOCUMENTATION TO THE IRS. SUCH A WAIVER WILL EXPEDITE THE DELIVERY OF RELEVANT ACCOUNT INFORMATION TO THE IRS.

If you are an actual or former UBS AG client, we are requesting that you give a waiver to UBS AG to provide your UBS AG account information to the IRS.

Should you have any questions regarding how to provide a waiver to UBS AG, you may consult the UBS AG website at www.ubs.com, or call UBS AG at +41 44 237 56 10.

**Q 54. I have applied to the offshore voluntary disclosure program and would like to make a payment to stop the running of interest. Where should I send my payment to make sure it is processed properly?**

A54. You can make an advance payment on the amount you expect to owe as a result of a voluntary disclosure by sending your check annotated in the note section of your check with your social security number and "advance payment on deficiency-VDP" to the following address:

    Internal Revenue Service
    Voluntary Disclosure Program
    P.O. Box 934
    Austin, TX 78767-0934

Later, when you and the IRS enter into a closing agreement, the IRS will apply the payment to the appropriate taxes and periods.

*Page Last Reviewed or Updated: 01-Oct-2017*    Share    Print

IRS   



| Our Agency | Know Your Rights | Resolve an issue | Other Languages | Related Sites |
|---|---|---|---|---|
| About IRS | Taxpayer Bill of Rights | Respond to a Notice | Español | U.S. Treasury |
| Work at IRS | Taxpayer Advocate Service | Office of Appeals | 中文 | Treasury Inspector General for Tax Administration |
| Help | Accessibility | Identity Theft | 한국어 | USA.gov |
| Contact Your Local Office | Civil Rights | Report Phishing | Русский | |
| Tax Stats, Facts & Figures | Freedom of Information Act | Tax Fraud & Abuse | TiếngViệt | |
| | No Fear Act | | | |
| | Privacy Policy | | | |

10